UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| CARRIE LARSON,<br><br>          Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>          Defendant. | 3:20-CV-03019-RAL<br><br>**OPINION AND ORDER GRANTING MOTION TO DISMISS** |

Carrie Larson filed this lawsuit against the United States under the Federal Tort Claims Act (FTCA). Doc. 1. Her claims in this lawsuit concern a grazing permit that Larson had secured from the Bureau of Indian Affairs (BIA) to pasture her cattle on tribal trust land located within the Rosebud Sioux Indian Reservation. Doc. 1. Larson alleges that the BIA committed various acts of negligence that disrupted and ultimately resulted in the cancellation of this grazing permit. Doc. 1. The United States has filed a motion to dismiss and a brief in support thereof, arguing that this Court lacks subject matter jurisdiction over Larson's claims. Docs. 8, 9. Larson has responded in opposition, Doc. 15, and the United States has replied, Doc. 17. This Court now grants the United States's motion to dismiss for the reasons contained herein.

I.      **Facts Relevant to Motion to Dismiss**

This Court in ruling on the motion to dismiss draws the facts primarily from Larson's complaint.[1] The BIA issued Larson a ten-year grazing permit on tribal trust land located within the Rosebud Sioux Indian Reservation. Doc. 1 at ¶ 4. The grazing permit allowed Larson to pasture her cattle on two range units, Units 262 and 275. Doc. 1 at ¶ 4. In exchange, Larson agreed to pay the BIA $10,090 annually for the benefit of the Rosebud Sioux Tribe. Doc. 10 at ¶ 2. Under the terms of the permit, Larson was required to obtain the BIA's permission to graze any cattle not contemplated by the permit and to make any improvements to the land. Doc. 10 at ¶ 3. According to Larson's complaint, the BIA gave Larson permission to allow third parties to pasture their cattle on her range units and authorized Larson to make certain improvements to the land such as creating water access for her cattle and constructing fences to enclose the range units. Doc. 1 at ¶¶ 7, 8, 15.

Larson claims that the BIA made a series of decisions that deprived her of the benefits of her grazing permit. Doc. 1 at ¶ 5. Larson alleges that the BIA allowed another individual to trespass on her range units. Doc. 1 at ¶ 5. She claims that this particular individual pastured almost 900 cattle on her range units for 21 days without her permission and that the BIA failed to prevent and terminate that trespass. Doc. 1 at ¶¶ 5, 17. Larson also claims that the BIA denied her the opportunity to allow certain individuals to graze their cattle on her range units even though the BIA had previously given her permission to do so. Doc. 1 at ¶ 16. She alleges that the BIA went

---

[1] Because the United States has stated that it is challenging the factual basis for subject matter jurisdiction, this Court may consider matters outside of the pleadings. Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914-15 (8th Cir. 2015). Because the factual allegations in Larson's complaint are insufficient to establish subject matter jurisdiction under the FTCA, this Court relies very little on the United States's Declaration of Wendy Wells, Doc. 10, in its recitation of the relevant facts.

as far as charging her with trespass. Doc. 1 at ¶ 16. Finally, Larson alleges that the BIA made misrepresentations to the Rosebud Sioux Tribe about unauthorized improvements on her range units and recommended that the Tribe withdraw these range units from the grazing permit area. Doc. 1 at ¶¶ 9, 12, 17. Larson claims that the Tribe consequently withdrew this land only because the BIA misrepresented her activities on the land and withheld the truth. Doc. 1 at ¶¶ 13, 14. Larson asserts that the BIA effectively cancelled her grazing permit and did not afford her any administrative remedies as required by law. Doc. 1 at ¶ 17.

Larson seeks to recover $1.1 million in damages for the loss of the grazing permit. Doc. 1 at ¶ 18. Larson identifies four acts of what she believes to be negligence under the FTCA: (1) the United States failed to provide accurate information to the Rosebud Sioux Tribe concerning Larson's grazing permit on two range units; (2) the United States failed to allow third-party grazing on Larson's range units; (3) the United States failed to prevent others from trespassing on Larson's range units; and (4) the United States failed to provide Larson with administrative remedies concerning the termination of her grazing permit. Doc. 1 at ¶ 17. The United States asserts sovereign immunity and argues that this Court lacks subject matter jurisdiction over all of these claims.

## II. Standard of Review

The United States brings its motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) authorizes dismissal for lack of subject matter jurisdiction. On a motion to dismiss under Rule 12(b)(1), the standard of review depends on whether the defendant is making a facial attack or factual attack on subject matter jurisdiction. Stalley v. Catholic Health Initiatives, 509 F.3d 517, 520–21 (8th Cir. 2007). Where the defendant makes a facial attack to challenge whether the facts alleged in the complaint establish subject matter jurisdiction under

3

Rule 12(b)(1), the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Namely, the Court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. Stalley, 509 F.3d at 521. A court's review then is limited to the face of the pleadings. Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914 (8th Cir. 2015).

On the other hand, where the defendant attacks the factual basis for subject matter jurisdiction, the court can consider matters outside the pleadings, "and the non-moving party does not have the benefit of 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6. "A factual attack occurs when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction." Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (cleaned up and citation omitted). In that case, "no presumptive truthfulness attaches to the plaintiff's allegations," and a "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn, 918 F.2d at 730 (citation omitted). The United States brings what it considers to be a factual attack, although the outcome remains the same if this Court were to view the motion to dismiss as a facial attack. Doc. 9 at 15.

### III. Discussion

The United States asserts that this action is barred under the doctrine of sovereign immunity. "Sovereign immunity shields the United States and its agencies from suit absent a waiver." Compart's Boar Store, Inc. v. United States, 829 F.3d 600, 604 (8th Cir. 2016) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)). "Sovereign immunity is jurisdictional in nature." Meyer, 510 U.S. at 475. Thus, the United States's consent to be sued is a prerequisite to a court acquiring jurisdiction over the case. Id. Any consent of the United States to be sued must be

"express and unequivocal." Preferred Risk Mut. Ins. Co. v. United States, 86 F.3d 789, 792 (8th Cir. 1996). If Congress chooses to waive sovereign immunity, then it prescribes "the terms and conditions on which the United States consents to be sued, and the manner in which the suit shall be conducted." Mader v. United States, 654 F.3d 794, 797 (8th Cir. 2011) (cleaned up and citation omitted).

When a federal defendant invokes sovereign immunity as a defense and ground for dismissal, the plaintiff must point to a specific act of Congress that waives sovereign immunity and allows the claims to go forward. See V S Ltd. P'ship v. Dep't of Hous. and Urb. Dev., 235 F.3d 1109, 1112 (8th Cir. 2000) ("To sue the United States, [the plaintiff] must show both a waiver of sovereign immunity and a grant of subject matter jurisdiction."). "Any waiver of sovereign immunity, including the FTCA, must be strictly construed and, to come within the ambit of a particular waiver, a claimant must fully adhere to all statutory procedures." Garreaux v. United States, 544 F. Supp. 2d 885, 894 (D.S.D. 2008) (citing United States v. Mitchell, 445 U.S. 535, 538 (1980) and Block v. North Dakota, 461 U.S. 273, 287 (1983)). Ultimately, it is the plaintiff that bears the burden of establishing that the United States has unequivocally waived its sovereign immunity. Id. (citing Barnes v. United States, 448 F.3d 1065, 1066 (8th Cir. 2006)).

Here, Larson alleges that the FTCA grants this Court subject matter jurisdiction over her claims and waives the United States's sovereign immunity. The FTCA indeed operates as both a grant of subject matter jurisdiction and a waiver of sovereign immunity over certain tort claims. Mader, 654 F.3d at 797. Such claims are those that are "actionable" under 28 U.S.C. § 1346(b)(1). Brownback v. King, 141 S. Ct. 740, 746 (2021) (citation omitted). A claim is "actionable" under § 1346(b)(1) if it alleges six elements. Id. The claim must be:

> (1) against the United States, (2) for money damages, . . . (3) for injury or loss of property, or personal injury or death (4) caused by

> the negligent or wrongful act or omission of any employee of the Government (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Id. (cleaned up); see also 28 U.S.C. § 1346(b)(1). The Eighth Circuit has made clear that the "law of the place" means "law of the state," regardless of whether the tortious act occurred on tribal or non-tribal land. LaFromboise v. Leavitt, 439 F.3d 792, 793, 796 (8th Cir. 2006). Thus, to make out an actionable FTCA claim in this case, Larson must allege that the BIA committed a tort under South Dakota law for which a private person could be held liable. See Buckler v. United States, 919 F.3d 1038, 1044 (8th Cir. 2019). Even if Larson does that, this Court may still lack jurisdiction. After all, the FTCA contains a number of exceptions to its waiver of sovereign immunity and grant of jurisdiction. See 28 U.S.C. § 2680. Among these exceptions are the intentional tort exception and the discretionary function exception. § 2680(a),(h).

As discussed above, Larson identifies four acts of what she considers to be negligence for which she seeks to hold the United States liable under the FTCA: (1) the United States failed to provide accurate information to the Rosebud Sioux Tribe concerning Larson's grazing permit on two range units; (2) the United States failed to allow third-party grazing on Larson's range units; (3) the United States failed to prevent others from trespassing on Larson's range units; and (4) the United States failed to provide Larson with administrative remedies concerning the termination of her grazing permit. Doc. 1 at ¶ 17. In response, the United States argues that this Court lacks jurisdiction over each of these claims because either (1) the claim is not actionable under § 1346(b)(1); or (2) the claim is barred by an exception to the FTCA's waiver of sovereign immunity under § 2680. Docs. 9, 17. This Court will examine the viability of each of Larson's claims in turn.

A. **Failure to Provide Accurate Information**

First, Larson alleges that the United States, through the BIA, failed to provide accurate information to the Rosebud Sioux Tribe concerning Larson's grazing permit on two range units located on tribal trust land. The United States argues that this Court lacks jurisdiction over this claim because it falls within the "intentional tort exception" to the waiver of sovereign immunity.

Under the intentional tort exception, the waiver of sovereign immunity does not extend to any claim "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Millbrook v. United States, 569 U.S. 50, 52 (2013) (quoting 28 U.S.C. § 2680(h)). To determine whether the intentional tort exception applies, courts should examine the conduct underlying the claim, not merely how the claim is labeled in the complaint. See United States v. Neustadt, 366 U.S. 696, 703 (1961) ("We must . . . look beyond the literal meaning of the language to ascertain the real cause of the complaint" (citation omitted)); Gross v. United States, 676 F.2d 295, 305 (8th Cir. 1982) (Gibson, J., dissenting) ("Unless a court looks at the acts giving rise to a complaint, the applicability of the FTCA will depend on the ingenuity of counsel in drafting the complaint."). Plaintiffs cannot circumvent § 2680(h) through "artful pleading of the claim." Buxton v. United States, No. CIV. 09-5057, 2011 WL 4528337, at *11 (D.S.D. Apr. 1, 2011); see also United States v. Shearer, 473 U.S. 52, 55 (1985) (explaining that the plaintiff could not avoid the reach of § 2680(h) by framing her complaint in terms of negligence when the sweeping language of § 2680(h) excludes any claim arising out of assault or battery). Thus, "a mere allegation of negligence does not turn an intentional tort into negligent conduct." Benavidez v. United States, 177 F.3d 927, 931 (10th Cir. 1999).

7

Even though Larson labeled this claim as negligence, redress for the conduct alleged lies not in negligence but in the cause of action for interference with contract or interference with prospective economic advantage. Under South Dakota state law, the elements for interference with contract and interference with prospective economic advantage are similar. Both torts require the plaintiff to prove: (1) the existence of either a valid contractual or economic relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional and unjustified act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship or expectancy was disrupted. Gruhlke v. Sioux Empire Fed. Credit Union, Inc., 756 N.W.2d 399, 406 (S.D. 2008); Mueller v. Cedar Shore Resort, Inc., 643 N.W.2d 56, 68 (S.D. 2002) (citation omitted).

Here, Larson alleges that she had an economic relationship with the Rosebud Sioux Tribe because she held a grazing permit on land held in trust by the BIA for the benefit of the Rosebud Sioux Tribe. She claims that the BIA made misrepresentations to the Rosebud Sioux Tribe that caused the Tribe to withdraw this land from the grazing permit area. As a result, her grazing permit was terminated, and she suffered damages. Such allegations do not constitute negligence under South Dakota law. Larson has not alleged that the BIA owed her a duty independent from the grazing permit or independent from interference with contract or interference with prospective economic advantage.[2] See Neustadt, 366 U.S. at 707 (reasoning that the plaintiff's claim arose out

---

[2]Throughout her brief in opposition to the United States's motion to dismiss, Larson argues that the United States had "a non-delegable duty and responsibility to an Indian rancher to insure that the Indian rancher is treated fairly and honestly in not only having access but also to maintaining the land for the duration originally allowed." Doc. 15 at 5. In support of this argument, she cites United States v. Mitchell, 463 U.S. 206 (1983). Mitchell has nothing to do with this case. In Mitchell, tribal members, a tribal association, and a tribe, all of whom owned interests in allotted trust land, brought a lawsuit against the United States in the United States Court of Federal Claims under the Tucker Act and the Indian Tucker Act for mismanagement of timber resources on that land and breach of fiduciary duty. Id. at 210. The question before the Supreme Court was whether

of misrepresentation because the only duty the government owed the plaintiff was "the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs," which is merely a restatement of the commonly understood legal definition of negligent misrepresentation). Because Larson's claim lies in interference with contract or interference with prospective economic advantage, this Court does not have jurisdiction over this claim.[3] See Moessmer v. United States, 760 F.2d 236, 237 (8th Cir. 1985) (holding that both interference with contract and interference with a prospective economic advantage are intentional torts barred from FTCA coverage).

---

federal law required the United States to pay money damages for its mismanagement of timber resources. Id. at 218. The Supreme Court ultimately held that federal law created a fiduciary relationship between owners of allotted trust land and the United States, and therefore, required the United States to pay money damages for its mismanagement of timber resources on allotted trust land. Id. at 226. Unlike the plaintiffs in Mitchell, Larson does not own any interests in allotted tribal trust land. In any event, the considerations under the FTCA and the Tucker Act and the Indian Tucker Act are vastly different. The Tucker Act authorizes claims against the United States based on federal statutory or regulatory violations or any express or implied contract with the United States. 28 U.S.C. §§ 1346(a)(2), 1491. The FTCA, on the other hand, authorizes state law claims against the United States for which a private person could be held liable. § 1346(b)(1). Thus, "[f]ederally imposed obligations, whether general or specific, are irrelevant to [the] inquiry under the FTCA, unless state law imposes a similar obligation upon private persons." Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992) (cleaned up and citations omitted). South Dakota law itself does not create a fiduciary relationship between Larson and the United States merely because she is a member of the Rosebud Sioux Tribe. Doc. 1 at ¶ 1.

[3] The United States also argues that any claim for misrepresentation must be dismissed as well. First, the United States argues that Larson's allegations do not state a claim for misrepresentation because the BIA allegedly made misrepresentations to a third party, not Larson herself. See Venture Commc'ns Coop., Inc. v. James Valley Coop. Tel. Co., 492 F. Supp. 3d 946, 963 (D.S.D. 2020) ("Under South Dakota law, the plaintiff must allege first-party reliance to state a claim for fraud."). But even if Larson had pled facts that stated a claim for misrepresentation, the United States argues that claim is also barred by the intentional tort exception. This Court agrees. See 28 U.S.C. § 2680(h); Bonuchi v. United States, 827 F.2d 377, 378 (8th Cir. 1987) ("Although the FTCA does not delineate the torts for which the United States may be sued, it does specifically except certain claims from application of the Act, including claims arising out of either intentional or negligent misrepresentation."). To the extent Larson is attempting to assert a claim for misrepresentation, this Court does not have jurisdiction under the FTCA over such a claim.

9

### B. Failure to Allow Third-Party Grazing

Larson next alleges that the United States, through the BIA, failed to allow third-party grazing on the range units even though the BIA had previously authorized third-party grazing. The United States asserts that this Court lacks jurisdiction over this claim because it is a claim for breach of contract, not a tort arising under South Dakota law.

Under South Dakota law, "breach of contract does not, by itself, constitute a tort." Fisher Sand & Gravel Co. v. State By & Through S. Dakota Dep't of Transp., 558 N.W.2d 864, 870 (S.D. 1997). To maintain a tort action, the plaintiff must allege "a breach of a legal duty independent of contract." Kreisers Inc. v. First Dakota Title Ltd. P'ship, 852 N.W.2d 413, 419 (S.D. 2014) (cleaned up and citation omitted). If the only duty owed by the defendant to the plaintiff is contractual, then the plaintiff's cause of action is limited to breach of contract. Id. A breach of contract claim against the United States is not actionable under the FTCA. Garreaux, 544 F. Supp. 2d at 896; Val-U Const. Co. of S. Dakota v. United States, 905 F. Supp. 728, 732 n.1 (D.S.D. 1995). Rather, contract claims against the United States are governed by the Tucker Act, codified at 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). Garreaux, 544 F. Supp. 2d at 895; Val-U Const. Co., 905 F. Supp. at 732 n.1. Under Section 1346(a)(2), federal district courts have concurrent jurisdiction with the Court of Federal Claims over contract claims against the United States not exceeding $10,000. However, contract claims against the United States that exceed $10,000 are within the exclusive jurisdiction of the Court of Federal Claims. § 1346(a)(2); Val-U Const. Co., 905 F. Supp. at 732 n.1.

Here, Larson and the BIA allegedly entered into an agreement in which Larson could have third parties pasture cattle on her range units. She alleges that the BIA violated that agreement when it charged her with trespass for allowing others to pasture cattle on her range units. She

seeks $1.1 million in damages. Larson has not alleged that the BIA breached a duty independent of contract.[4] Even though Larson characterizes this claim as a claim of negligence, she has merely pled a breach of contract claim. This Court does not have jurisdiction over contract claims under the FTCA, and it does not have jurisdiction over contract claims exceeding $10,000 under the Tucker Act. Garreaux, 544 F. Supp. 2d at 895-96.

### C. Failure to Prevent Trespass

Larson also alleges that the United States, through the BIA, allowed and failed to prevent another individual to trespass on the range units with some 857 cattle grazing on the range units for 21 days. The United States argues that this Court lacks jurisdiction over this claim because it is a breach of contract claim, or alternatively falls within the discretionary function exception to the United States's waiver of sovereign immunity.

The United States's obligation to prevent trespass on these range units arises from the terms of the permit, which is a contract. But this obligation also appears to arise from federal regulations concerning the BIA's trespass policy. Under that policy, the BIA "will" investigate and respond to claims of trespass. 25 C.F.R. § 166.801. As a part of its response to the alleged trespass, the BIA "will" instruct the trespasser of any corrective action that must be taken. Id. at §

---

[4] Again, Larson argues that BIA owed her an independent duty to be "fair and impartial" in its administration of grazing permits, similar to the duties owed by a private person acting as a trustee under South Dakota law. Doc. 15 at 7. This argument fails for the same reasons discussed above. While there is a fiduciary relationship under federal law between the United States and the beneficial owners of allotted interests, Larson is not suing the United States as a beneficial owner of allotted interests, so the United States owes no fiduciary obligations to Larson under either federal law or South Dakota law. See Garreaux, 544 F. Supp. 2d at 896 ("The government owes no fiduciary duties to parties who are not landowners . . . . The government is simply not a trustee on behalf of lessees." (citations omitted)). Even if the United States owed fiduciary duties to Larson, a "breach of trust claim is clearly not a claim arising under the FTCA." Bear v. United States, No. CV 14-5071-JLV, 2017 WL 1082395, at *3 (D.S.D. Mar. 22, 2017) (quoting Moran v. United States, No. CIV 07-3006, 2007 WL 4570813, at *2 (D.S.D. Dec. 26, 2007)).

11

166.803(a)(4). If appropriate, the BIA "will" assess monetary penalties against the trespasser and will ensure that damaged Indian agricultural land is rehabilitated. Id. at § 166.801. Nevertheless, to the extent that Larson argues that the United States had an independent duty under federal law to prevent and terminate trespass, the Eighth Circuit has made clear that the United States's failure to fulfill a federally imposed obligation is not actionable under the FTCA. See Klett, 965 F.2d at 589 ("Federally imposed obligations, whether general or specific, are irrelevant to [the] inquiry under the FTCA, unless state law imposes a similar obligation upon private persons." (cleaned up and citations omitted)). Because Larson cannot identify an independent duty under South Dakota law to prevent trespass, this claim is not actionable under the FTCA.[5]

In any event, the regulations give the BIA discretion to determine how to respond to trespassing. Thus, even if the claim were actionable under § 1346(b)(1), the discretionary function exception appears to bar any such claim. Under the discretionary function exception, the waiver of sovereign immunity does not extend to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an

---

[5] Again, Larson argues that the BIA owed her a fiduciary duty under South Dakota law to prevent and terminate trespass. As discussed above, the United States and Larson do not have fiduciary relationship because Larson is not the beneficial owner of this allotted trust land; the Rosebud Sioux Tribe is the beneficial owner of the land, and she is merely leasing it. Larson cites several cases, including Mitchell, that discuss the United States's fiduciary relationship with Indians and Indian tribes under federal law. See Doc. 15 at 9–10. However, in all those cases, the plaintiffs suing for breach of fiduciary duty were the beneficial owners of allotted trust interests, and they were suing in the Court of Federal Claims under the Tucker Act, not in federal district court under the FTCA. See United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003) (determining whether the Court of Federal Claims had jurisdiction over the tribe's lawsuit under the Tucker Act for breach of fiduciary duty in management of land held in trust for the tribe's benefit); Shoshone Indian Tribe of the Wind River Rsrv. v. United States, 56 Fed. Cl. 639 (2003) (same); Oglala Sioux Tribe of Pine Ridge Indian Rsrv. v. United States, 21 Cl. Ct. 176 (1990) (same); Cherokee Nation of Oklahoma v. United States, 23 Cl. Ct. 117 (1991) (considering motions to strike in the tribe's lawsuit under the Tucker Act for breach of fiduciary duty in management of land held in trust for the tribe's benefit).

employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To determine whether the discretionary function exception applies, courts must apply a two-step test. Hinsley v. Standing Rock Child Protective Servs., 516 F.3d 668, 672 (8th Cir. 2008). The first step requires a court to consider whether the action involves "an element of judgment or choice." Metter v. United States, 785 F.3d 1227, 1230 (8th Cir. 2015) (quoting United States v. Gaubert, 499 U.S. 315, 322 (1991)). To determine whether an action involves an element of judgment or choice, a court should consider whether the relevant statutes and regulations mandate a specific course of action. Dykstra v. U.S. Bureau of Prisons, 140 F.3d 791, 795 (8th Cir. 1998). If the relevant statutes and regulations mandate a specific course of action, the agency has no discretion and thus the exception does not apply. Id. On the other hand, an agency has discretion if the relevant statutes or regulations use "permissive language, rather than mandatory terms, such as 'must' or 'shall.'" Metter, 785 F.3d at 1231.

If the court finds that the action is discretionary—i.e., a product of judgment or choice—it should move to the second step in its analysis. The second step requires a court to consider whether that judgment or choice "is of the kind that the discretionary function was designed to shield." Id. at 1230-31 (cleaned up and citations omitted). The discretionary function exception is intended to protect decisions "grounded in social, economic, or political policy." Dykstra, 140 F.3d at 795. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." Layton v. United States, 984 F.2d 1496, 1500 (8th Cir. 1993) (quoting Gaubert, 499 U.S. at 324)). That presumption can be rebutted. See Herden v. United States, 726 F.3d 1042, 1048 (8th Cir. 2013) (noting that the plaintiff must rebut the presumption).

Here, it is BIA policy to give written notice of the claimed trespass to the trespasser. 25 C.F.R. § 166.803. Within that notice, the BIA will instruct the trespasser of any corrective actions he or she must take. § 166.803(a)(4). If the trespasser fails to take that corrective action:

> [the BIA] *may* take one or more of the following actions, *as appropriate*:
>
> (a) Seize, impound, sell or dispose of unauthorized livestock or other property involved in the trespass. [The BIA] may keep such property [the BIA] seize[s] for use as evidence.
>
> (b) Assess penalties, damages, and costs, under § 166.812 of this subpart.

Id. at § 166.806 (emphasis added). This regulation uses permissive language; it does not mandate a specific course of action. Because the regulation uses permissive language, it allows the BIA to exercise its judgment or choice in responding to alleged trespass. Therefore, it is discretionary under the first step of the test.

Because the decision is discretionary, there is a "strong presumption" under the second part of the test that the BIA's decision was grounded in policy. Layton, 984 F.2d at 1500 (quoting Gaubert, 499 U.S. at 324). Larson must rebut this presumption. See Dykstra, 140 F.3d at 796 (holding the plaintiff must allege facts establishing that the government actor's decision was not grounded in policy considerations to rebut the presumption). Larson has failed to claim or make any argument that the BIA's decision was not grounded in policy considerations. See Doc. 15 at 9–10. This Court therefore presumes that the BIA's decision not to take additional action after the trespassers failed to take corrective action is grounded in policy considerations.[6] See Dykstra,

---

[6] The BIA evidently gave Kenny McFarland and Justin Edwards trespass notices in compliance with 25 C.F.R. §§ 166.801 and 166.803. Doc. 10 at ¶ 20. Thus, the principal dispute is whether the BIA was required to take further steps if the trespassers failed to take the corrective action as ordered in the trespass notice.

14

140 F.3d at 796. Indeed, the Eighth Circuit has stated that "[a]lthough the federal government has a duty to enforce the law, the means by which it proceeds to do so are protected by the discretionary function exception to the FTCA." Abernathy v. United States, 773 F.2d 184, 188 (8th Cir. 1985). In sum, this Court lacks jurisdiction over this claim because it is not an actionable claim under 28 U.S.C. § 1346(b)(1), and even if it were, the claim would be barred by the discretionary function exception.[7]

### D. Failure to Provide Administrative Remedies

Finally, Larson alleges that the United States, through the BIA, failed to provide her with administrative remedies in terminating her grazing permit on the two range units. The United States contends that this claim is not actionable under the FTCA because it is not a claim for which a private person could be held liable under South Dakota state law.

Under the FTCA, the United States is liable only to the extent that a private person could be held liable under the applicable state law. United States v. Olson, 546 U.S. 43, 45–46 (2005); Sorace v. United States, 788 F.3d 758, 763 (8th Cir. 2015). "Federally imposed obligations, whether general or specific, are irrelevant to [the] inquiry under the FTCA, unless state law imposes a similar obligation upon private persons." Klett, 965 F.2d at 589 (cleaned up and citation omitted). As the Eighth Circuit has previously emphasized, "if a private person acting in similar circumstances would not be liable under state law for the alleged harm, then there is no FTCA waiver of sovereign immunity." Buckler, 919 F.3d at 1044.

---

[7] Larson seems to believe that if she alleges that the United States committed a tort under South Dakota law, the discretionary function exception cannot apply. For the reasons explained in this opinion and order, Larson had not pleaded a viable tort claim in her complaint. But if she had, the discretionary function exception shields the United States from suit regardless of allegations of negligence in performing discretionary acts. See Buckler, 919 F.3d at 1045 (noting that "the exception applies regardless of whether the government employee abuses that discretion").

Here, Larson alleges that the United States failed to follow the procedures set forth in 25 C.F.R. § 166.705(c)(3) before cancelling her grazing permit.[8]  However, the failure to follow federal regulations is not an actionable claim under the FTCA.  See Klett, 965 F.2d at 589 ("The violation of a federal statute or administrative regulation by an agency of the United States does not, standing alone, create a cause of action under the FTCA.").  Larson has a cause of action under the FTCA only if she can establish that a private person has similar obligations under South Dakota law.  Id.  Larson argues that similar obligations do indeed exist under South Dakota law.

Larson cites to two South Dakota cases to support this contention.  The first case is Osterkamp v. Alkota Manufacturing, Inc., 332 N.W.2d 275, 276 (S.D. 1983), in which an employee sued his former employer for wrongful discharge.  The employee alleged that the employer had failed to follow the disciplinary procedures in the employer's employee handbook before terminating that employee.  Id. at 277.  The Supreme Court of South Dakota agreed, holding that the evidence was sufficient to support the jury's verdict for the employee as a breach of contract remedy and that the trial court abused its discretion in granting a new trial.  Id. at 277–78.  In Osterkamp, the employer was required to follow a certain disciplinary procedure before terminating the employee because it was required by the employee handbook, which formed part of the contractual relationship between the parties.  Id. at 277.  Thus, the claim in Osterkamp was based on breach of contract and did not arise from any independent tort duty on the employer to follow certain procedures before terminating his employees.  Id. at 278.  Larson's reliance on Osterkamp is thus misplaced.

The other case to which Larson cites is Tri County Landfill Ass'n, Inc. v. Brule County, 535 N.W.2d 760 (S.D. 1995), which is similarly unhelpful to her argument.  In that case, the

---

[8] Section 166.705 generally discusses curing permit violations and cancelling permits altogether.

plaintiff appealed a county commission's decision to deny approval of a landfill. Id. at 762. A South Dakota statute, SDCL § 34A-6-103, limited the county commission's discretion to rescind a permit for a landfill after the Board of Minerals and Environment had already authorized it. SDCL § 34A-6-103. The Supreme Court of South Dakota determined that the county commission abused its discretion because it rescinded the permit on grounds not contemplated by the statute. Tri Cnty. Landfill, 535 N.W.2d at 765. Tri County Landfill concerns a local government's power to approve or deny permits for a landfill project. In an FTCA inquiry, courts are concerned with the obligations that state law imposes on private individuals or entities, not the obligations it imposes on its government entities. See Olson, 546 U.S. at 45–46 ("The Act says that it waives sovereign immunity 'under circumstances where the United States, if a private person,' not 'the United States, if a state or municipal entity,' would be liable." (citing 28 U.S.C. § 1346(b)(1)). Tri County Landfill does not recognize or even discuss a private individual's duty to provide certain processes or procedures to those who seek to challenge that person's decision. Because Larson has failed to identify any South Dakota law that requires private persons to follow procedures similar to those that the BIA must follow in 25 C.F.R. § 166.705, this Court lacks jurisdiction under the FTCA over her claim.

### IV.  Conclusion

In sum, this Court does not have FTCA jurisdiction over any of Larson's claims. Therefore, it is hereby

ORDERED that the United States's Motion to Dismiss, Doc. 8, is granted without prejudice to Larson filing a Tucker Act claim.

DATED this 17th day of August, 2021.

                          BY THE COURT:

                          _____
                          ROBERTO A. LANGE
                          CHIEF JUDGE